UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

AURORA COMMERCIAL CORP.,

                   Debtor.

GERARD M. PIERRE,

                   Appellant,

– against –

AURORA COMMERCIAL CORP. and
AURORA LOAN SERVICES, LLC.,

                   Appellees.

**OPINION & ORDER**

20 Civ. 8282 (ER)

RAMOS, D.J.:

*Pro se* appellant Gerard M. Pierre appeals from an order of the United States Bankruptcy Court for the Southern District of New York (Chapman, J.) in the underlying Chapter 11 bankruptcy proceeding brought by Debtors Aurora Commercial Corp. ("ACC") and Aurora Loan Services, LLC ("ALS," and together "Debtors"). By order dated September 14, 2020 (the "Order"), the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") disallowed and expunged Pierre's Proof of Claim No. 79, Pierre's second claim in the underlying action, for the same reasons that the Bankruptcy Court had previously disallowed and expunged Pierre's first claim, Proof of Claim No. 26. For the reasons set forth below, the Bankruptcy Court's Order is AFFIRMED and Pierre's appeal is DISMISSED.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Pierre's instant appeal arises out of the same set of facts as did his prior appeal of the Bankruptcy Court's order disallowing his earlier-filed Proof of Claim No. 26 (the "First Claim").  Bankr. Doc. 530, Doc. 12-9.[1]  The underlying facts are set forth in an earlier decision by United States District Judge John G. Koeltl affirming the Bankruptcy Court's order disallowing and expunging the First Claim.  *See Pierre v. Aurora Commercial Corp.*, 620 B.R. 210 (S.D.N.Y. 2020) ("*Pierre I*").  The Court assumes familiarity with Judge Koeltl's prior opinion and will restate only the factual background necessary for the resolution of the instant appeal.

By way of background, Pierre's claims asserted in the underlying bankruptcy proceeding date back to his own Chapter 7 bankruptcy proceedings before the United States Bankruptcy Court for the District of Colorado (the "Colorado bankruptcy court") in 2009 and the subsequent foreclosure of his home.  *Pierre I*, 620 B.R. at 213.  During the pendency of Pierre's bankruptcy proceedings, ALS, the then-owner of the note on Pierre's property in Lone Tree, Colorado, moved the Colorado bankruptcy court for relief from the automatic bankruptcy stay, arguing that it was entitled to such relief based on Pierre's failure to make five monthly payments in connection with the note.  *Id.*  On March 17, 2009, the Colorado bankruptcy court held a hearing on the motion, and Pierre did not appear.  *Id.*  The Colorado bankruptcy court then entered an order granting ALS relief from the stay, including the ability to foreclose on the Lone Tree property, which ALS did in September 2009.  *Id.*

In April 2013, more than three years after the foreclosure on his property, Pierre received what he described as a "'notice of eligibility' to receive payment as a result of

---

[1] References to "Doc." indicate documents filed in the instant appeal.  References to "Bankr. Doc." indicate documents filed in the underlying bankruptcy proceeding, *In re Aurora Commercial Corp., et al.*, No. 19-10843 (SCC).

2

an agreement between federal banking regulators and Aurora[2] in connection with an enforcement action related to deficient mortgage servicing and foreclosure processes." Doc. 12-11 at 13.  The notice enclosed a check in the amount of $300.00 and stated that Pierre was receiving the payment because

> [e]arlier this year, Aurora entered into an agreement with federal banking regulators—the Office of Comptroller of Currency and the Board of Governors of the Federal Reserve System.  This agreement resolved the Independent Foreclosure Review required by the regulators.  [ . . . ]  Regulators determined your payment amount based on the state of your foreclosure process and other consider[ations] related to your foreclosure.

Doc. 12-13 at 52.  The notice further stated, "[b]y cashing or depositing the check, you do not waive any legal claims against your servicer" and "[t]his payment does not mean that you necessarily suffered financial injury or harm." *Id.* at 53.  The record on appeal makes clear that Pierre received the notice as a result of a settlement agreement between the Office of Comptroller of the Currency ("OCC"), the Federal Reserve, and ACC, along with several other mortgage servicing companies, to compensate borrowers possibly affected by deficient mortgage servicing and foreclosure practices connected with the financial crisis.  *See* Doc. 12-13 at 52-62; *see also* "Independent Foreclosure Review to Provide $3.3 Billion in Payments, $5.2 Billion in Mortgage Assistance," Jan. 7, 2013 at https://www.occ.gov/news-issuances/news-releases/2013/nr-ia-2013-3.html (last accessed Aug. 10, 2021).[3]

In June 2014, Pierre brought a complaint *pro se* in the United States District Court for the District of Colorado asserting fifteen claims against ACC, ALS, ALS' law firm,

---

[2] Aurora Bank, FSB ("Aurora") is the prior name of ACC.  Bankr. Doc. 1 at 1-2.  ACC owns ALS in its entirety.  Doc. 12 at 2.  ACC is a subsidiary of Lehman Brothers Holdings, Inc.  *Id.*; *see also* Bankr. Doc. 1 at 1-2.

[3] The Court may take judicial notice of press releases from government agencies.  *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 589 n.4 (S.D.N.Y. 2015) (collecting cases).  Furthermore, Federal Rule of Evidence 201(b) authorizes a court to judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

the United States Department of the Treasury, the OCC, and several other entities. *See Pierre v. Aurora Loan Servs., LLC,* No. 14-cv-01572-BNB, 2014 WL 11269955, at *2 (D. Colo. Sept. 8, 2014). On September 8, 2014, the Colorado District Court dismissed Pierre's claim *sua sponte* for failure to meet the pleading requirements of Fed. R. Civ. P. 8. *Id.* Pierre appealed, and the Tenth Circuit Court of Appeals affirmed the dismissal of Pierre's action. *Pierre v. Aurora Loan Servs., LLC*, 602 F. App'x 410, 413 (10th Cir. 2015). Pierre later also filed a motion to intervene in a separate Colorado state court brought by third party Allonhill, LLC, against ACC (f/k/a Aurora Bank FSB) arising out of ACC's foreclosure practices, which motion the Colorado court denied in September 2017. *See Pierre I*, 620 B.R. at 213; Doc. 12-13 at 27-28; *see also Allonhill, LLC v. Aurora Bank FSB, et al.*, Case No. 2012CV6381 (Colo. County Ct. Oct. 15, 2012).

In January 2016, Pierre submitted an appeal to the Consumer Financial Protection Bureau ("CFPB") and the OCC, arguing that the OCC's review of his foreclosure file was incorrect and that he was entitled to a greater amount of compensation than the $300.00 he had received in April 2013. Doc. 12-11 at 15. In April 2016, the Office of the Ombudsman of the OCC responded that its office had conducted an independent review and went on to state

> We reviewed this information, along with previous correspondence on these same matters between you and our office. There is no appeal of the payment amount received by borrowers under the IFR Payment Agreement. In addition, there exists no individual private right of action to enforce the Office of the Comptroller of the Currency Consent Order agreements. We regret we can offer you no further assistance in this matter. This concludes our investigation of your complaint, and this letter represents our final response. Your case has been through each appeal level and is now closed.

Doc. 12-13 at 62.

On March 24, 2019, Debtors ACC and ALS initiated Chapter 11 bankruptcy proceedings by each filing petitions for relief before the Bankruptcy Court. Bankr. Doc. 1. On April 30, 2019, the Bankruptcy Court entered an order establishing June 10, 2019 as

4

the bar date for proofs of claim. Bankr. Doc. 29. On June 9, 2019, five years after he first sued ACC and ALS in the Colorado District Court, Pierre filed the First Claim against ALS.[4] Doc. 12-2. Pierre's First Claim sought $228,312.51 for personal injury, due to ALS' and its then counsel's "false and misleading statements, fraudulent practices" and misrepresentations before the Colorado bankruptcy court. *Id.* at 2, 11-12. The First Claim alleged that ALS had wrongly foreclosed on his property in violation of the automatic stay entered by the Colorado bankruptcy court, and that he had been deprived of his procedural due process rights in those proceedings. *Pierre I*, 620 B.R. at 216. The Debtors moved to disallow Pierre's First Claim and filed their objections thereto on August 27, 2019. Doc. 12 at 8. The Bankruptcy Court scheduled a hearing on the Debtors' objection for October 23, 2019. Doc. 12-21.

On October 18, 2019, five days prior to the hearing, Pierre filed the Second Claim against ALS on the Debtors' claims register. Doc. 12-11. The Second Claim amended the First Claim by increasing the amount sought by $62,200.00, on the basis of financial injury. *Id.* at 1-2. Pierre attached to the form a supplemental document titled "Amendment to Proof of Claim No. 26 filed by Gerard Pierre on June 9, 2019," on which he indicated that the relevant hearing date was October 23, 2019. *Id.* at 7. In the Second Claim, Pierre restated his allegations of violation of the automatic stay and wrongful foreclosure by ALS and its former counsel. Pierre claims that he "was injured . . . as a result of Auroras' deficient foreclosure processes" and that he "should be compensated as a result of that wrong." *Id.* at 12. Pierre further argued that he was entitled to an additional $62,200.00 because he had not received an adequate independent review of his foreclosure, and because his foreclosure had been miscategorized by the OCC in calculating the compensation owed to him. *Id.* at 14-16. Pierre also cited, but did not include, three

---

[4] The proof of claim form indicated that claimants should file their claim against only one Debtor. *See* Docs. 12-2, 12-11. *In re Aurora Loan Services LLC*, No. 19-10844 (SCC) is jointly administered with *In re Aurora Commercial Corp.*, No. 19-10843 (SCC), and ALS is wholly owned by ACC. Doc. 12 at 2.

additional exhibits in support of his contention that he was owed an additional $62,200.00: a June 7, 2016 *Denver Post* article; a press release by the United States Attorney's Office for the District of Colorado stating that the Office had agreed to a $41 million fine against ALS for its conduct in originating and selling mortgage loans from 2004 to 2008; and certain findings by the Office of Thrift Supervision and the Office of the Comptroller of the Currency.[5]  *Id*. at 8-9.

At a hearing on October 23, 2019, the Bankruptcy Court considered Debtors' objections to proofs of claim filed by four claimants, including Pierre.  Tr. of 10/23/19 Hr'g at 9:9–22:2, Doc. 12-8.  By oral ruling, the Bankruptcy Court sustained Debtors' objection and disallowed and expunged the First Claim, finding that Pierre's claims were time barred.  *Id.* at 21:19–22:5.  On November 14, 2019, the Bankruptcy Court entered a written ruling, dated November 13, sustaining Debtors' objection and further explaining its reasons for disallowing the First Claim.  Doc. 12-9.  The Bankruptcy Court found that ALS had not violated the automatic stay through its foreclosure and sale of Pierre's property, that the 2009 proceedings before the Colorado bankruptcy court had not denied Pierre his due process rights, and that Pierre's claims were "barred by any applicable statutes of limitation and the doctrine of laches."  *Id.* at 3-4.  The Bankruptcy Court did not address Pierre's Second Claim either at the October 23, 2019 hearing or in its written order.

On December 4, 2019, more than 14 days after the entry of the Bankruptcy Court's November 14, 2019 order, Pierre filed a notice of appeal of that order and at the same time moved for an extension of time to file his notice of appeal, on the basis of

---

[5] As noted in Debtors' brief, Pierre's filing on the claims register did not include the underlying documents to the exhibits, only the cover pages to referenced exhibits.  Doc. 12 at 6, n.5.  Exhibits I, II, and III, mentioned above, are not included in the record, *see* Doc. 12-13, Bankr. Doc. 307, although the U.S. Attorney's Office for the District of Colorado press release is available at https://www.justice.gov/usao-co/pr/former-colorado-mortgage-originator-subsidiary-lehman-brothers-agrees-pay-41-million (last accessed August 10, 2021).  Exhibits A-C and F-H are included with Pierre's response to Debtors' objection.  Doc. 12-13.

excusable neglect. Doc. 12-10, Bankr. Doc. 262.

On December 30, 2019, Debtors filed their first omnibus objection to untimely claims, including Pierre's Second Claim. Doc. 12-12. Specifically, Debtors objected to Pierre's Second Claim on the grounds that the "Late Pierre Claim is drafted as a further response to the Pierre Claim Objection," *id.* at 9, and argued that the Second Claim "is either related to the expunged [First] Claim and the [November 14, 2019] Order applies to it, or if it relates to a different cause of action, is a late claim and barred by operation of the Bar Date Order." *Id.* In response, Pierre argued that the Second Claim was timely because it amended the First Claim, which was filed before the bar date. Doc. 12-13 at 8. His response emphasizes throughout that the Second Claim was an amendment of the First Claim, not a different cause of action, and therefore not untimely. *Id.* at 2-3. The Bankruptcy Court's scheduled hearing on Pierre's Second Claim was adjourned from its initial date of January 29, 2020, pending the outcome of the first appeal. Docs. 12-12 at 1-3, 12-22, 12-23.

On July 24, 2020, after first remanding to the Bankruptcy Court to decide Pierre's motion for an extension of time to file his appeal, Judge Koeltl affirmed the Bankruptcy Court's order, determining that the Bankruptcy Court did not err in finding that Pierre's First Claim relating to the 2009 Colorado Bankruptcy Court proceedings and the foreclosure of his home "would be time barred by any applicable statute of limitations and the doctrine of laches." *Pierre I*, 620 B.R. at 216 (internal quotations and citations omitted).[6] The Court also affirmed the Bankruptcy Court's findings that Pierre's claims that ALS had violated the automatic stay during the Colorado bankruptcy proceedings and that he had been denied due process in connection with those proceedings lacked merit. *Id.* at

---

[6] As Judge Koeltl noted, the Bankruptcy Court did not specify the applicable statute of limitations but was nonetheless correct that Pierre's claims would be barred, *Pierre I*, 620 B.R. at 220, n.5, because the Colorado statute of limitations for tort actions is two years. *Id.* at 217-218.

7

219.  The court further found that there was no basis for equitable tolling.  *Id.* at 216.  Pierre did not appeal Judge Koeltl's ruling affirming the Bankruptcy Court's order.

On September 3, 2020, the Bankruptcy Court held a hearing and addressed, among other matters, Debtors' objection to the Second Claim.  Tr. of 09/03/20 Hr'g, Doc. 12-17.  At the hearing, Pierre again stated that his Second Claim related back to his original claim, and therefore was timely.  *Id.* at 6:23–25.  The Bankruptcy Court explained on the record that, since the Second Claim merely amended the First Claim, which had been disallowed by the Bankruptcy Court, it was "expungeable on the same basis."  *Id.* at 7:13–21.  The Bankruptcy Court also explained that the Second Claim had not been considered at the October 23, 2019 hearing on the First Claim because Pierre filed the Second Claim only five days before that hearing date, and "the reason that it was not addressed was because . . . the rules require thirty days' notice for a claim objection."  *Id.* at 8:9–14.  The Bankruptcy Court specifically explained that the prior opinion issued by Judge Koeltl dismissing Pierre's first appeal had not addressed the Second Claim because the Bankruptcy Court had not yet ruled on it, and that the Bankruptcy Court  was holding a hearing on the Second Claim in order to afford Pierre his due process rights.  *Id.* at 8:20–11:1.  The Bankruptcy Court then found on the record that Pierre had made clear that his intention in filing the Second Claim was to amend the First Claim to increase the amount of damages sought.  *Id.* at 14:23–25.  The Bankruptcy Court ruled that

> the second claim merely restates the arguments raised in the first claim.  Therefore, for the same reasons that this Court has previously disallowed and expunged the first claim . . . and for the reasons that decision was upheld by the district court, the second claim is hereby disallowed and expunged.

*Id.* at 15:24–16: 5.

On September 14, 2020, the Bankruptcy Court issued a written ruling confirming its oral ruling sustaining Debtors' objection to the Second Claim.  Bankr. Doc. 530.  The Bankruptcy Court did not specifically find that the Second Claim should be dismissed as

8

untimely by operation of the June 10, 2019 bar date in either its written or oral rulings. *See id.*; Tr. of 09/03/20 Hr'g, Doc. 12-17.

Pierre's timely appeal followed. On October 13, 2020, Debtors requested, pursuant to Rule 13 of the Local Rules for the Division of Business Among District Judges for the Southern District of New York, that the instant appeal be designated as related to the first appeal before Judge Koeltl, *Pierre I*, No. 19 Civ. 11207 (JGK), 620 B.R. at 210. Doc. 5. However, because the first appeal before Judge Koeltl was closed on July 24, 2020, *Pierre I*, 620 B.R. at 220, the Court denied Debtors' request that the instant appeal be designated as related because under Local Rule 13(a)(2)(B), both cases must be pending to be deemed related. Doc. 7.

## II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals ... from final judgments, orders, and decrees; ... [and,] with leave of the court, from other interlocutory orders and decrees ... of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 98 (2d Cir. 1990); *In re Residential Capital, LLC,* 519 B.R. 606, 612 (S.D.N.Y. 2014). A bankruptcy court's discretionary decisions are reviewed for abuse of discretion. *See, e.g., In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997).

In reviewing a decision of a bankruptcy court, the district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision [ ] below." *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). But the district court may not consider evidence outside the record. *See In re Bear Stearns High-Grade Structured Credit Strategies Master*

9

*Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008).  Any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal.  *See In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994); *see also, e.g., In re Barquet Grp., Inc.*, 486 B.R. 68, 73 n. 3 (S.D.N.Y. 2012) (citing *In re Enron Corp.*, 419 F.3d 115, 126 (2d Cir. 2005)).

### III. DISCUSSION

#### A. The Bankruptcy Court Properly Disallowed and Expunged Pierre's Second Claim

The Bankruptcy Court did not err in disallowing the Second Claim for the same reasons that it disallowed the First Claim, and for the same reasons previously affirmed by the district court—namely, that Pierre's claims were barred under the applicable statute of limitations and by the equitable doctrine of laches.  *Pierre I*, 620 B.R. at 218-219.

On appeal, Pierre attempts to thread the needle, arguing again that the Second Claim amended the First Claim, and that the Bankruptcy Court failed to consider the Second Claim during the October 23, 2019 hearing on the First Claim.  Doc. 11 at 16-17.  At the same time, Pierre argues that the Second Claim "does not merely amend and restate" the First Claim because it "adds additional statements" and requests additional compensation in the amount of $62,200.00.  *Id.* at 18-19.  Debtors argue that the Bankruptcy Court correctly found that the Second Claim related back to the First Claim.  Doc. 12 at 21-22.  In the alternative, Debtors argue, the Bankruptcy Court would have had the discretion to dismiss the Second Claim as untimely because it was filed after the June 10, 2019 bar date, which provides another basis for dismissal.  *Id.* at 21.

The Bankruptcy Court did not err in disallowing the Second Claim.  Throughout Pierre's filings before the Bankruptcy Court, at the September 3, 2020 hearing on the Second Claim, and in his papers on appeal, Pierre insists that the Second Claim relates

back to and amends the First Claim. *See, e.g.*, Doc. 12-13 at 2 ("[The Second Claim] or the 'Amendment' to [the First Claim] is not a different cause of action because the 'Amendment' asserts claims with the same documents referenced in the original [claim]"); Tr. of 09/03/20 Hr'g at 6:23–7:2, Doc. 12-17; Doc. 11 at 15-17 (characterizing the Second Claim as "amended" and as an amendment to the First Claim), 18-19 (conceding that the Second Claim "does restate some of the same assertions," and insisting that the Second Claim "relates back" to the First Claim because it "either 1) corrects a defect a form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim.") As Pierre concedes, and as the Bankruptcy Court noted in both its oral and written rulings, the Second Claim arises out of the same facts that formed the basis of the First Claim. Tr. of 09/03/20 Hr'g at 14:23–16:5, Doc. 12-17; Bankr. Doc. 530.

There was therefore no error in the Bankruptcy Court's disallowing and expunging the Second Claim, and indeed it is manifestly clear that the Second Claim is barred by *res judicata*. *Res judicata* "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same [claim, or] cause of action." *In re Teltronics Servs., Inc.,* 762 F.2d 185, 190 (2d Cir.1985); *see also In re Residential Cap., LLC*, 507 B.R. 477, 491 (Bankr. S.D.N.Y. 2014); *Matter of AMR Corp.*, 566 B.R. 657, 668 (S.D.N.Y. 2017) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). Here, all four factors are squarely met. The Bankruptcy Court entered a final judgment disallowing and expunging the First Claim, which Judge Koeltl upheld. The First Claim involved the same parties and the same cause of action. As stated above, Pierre repeatedly expressed that the Second Claim amended the First Claim and arose out of the same underlying facts—namely, that the 2009 foreclosure by ALS on his Lone Tree, Colorado property was carried out improperly. As the Bankruptcy Court noted, the fact that Pierre has added additional statements and requests additional

11

compensation is of no moment. The Second Circuit has stated that res judicata applies "not only as to what was pleaded, but also as to what could have been pleaded. *In re Teltronics Servs.,* 762 F.2d at 193. Furthermore, "[w]here material factual allegations overlap, 'the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that the facts *essential to the second* were [already] present in the first.'" *In re Residential Cap., LLC*, 507 B.R. at 493 (quoting *Waldman v. Vill. of Kiryas Joel,* 207 F.3d 105, 110–11 (2d Cir.2000)).

Pierre also argues that the Second Claim must be allowed because Debtors waived their right to object to it by failing to contest it at the October 23, 2019 hearing on the First Claim and therefore were barred under the doctrine of judicial estoppel. Doc. 11 at 19-22. While the application of judicial estoppel depends on "specific factual contexts," judicial estoppel may be invoked "when a party's position is clearly inconsistent with an earlier litigation position, the party persuaded a court to accept the earlier position, and the party will obtain a benefit from the new position." *In re Residential Cap., LLC*, 519 B.R. 606, 610 (S.D.N.Y. 2014) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). In the Second Circuit, the doctrine of judicial estoppel applies only "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* (quoting *Uzdavines v. Weeks Marine, Inc.*, 418 F.2d 138, 148 (2d Cir. 2005)).

As Debtors note, Pierre's waiver and judicial estoppel arguments fail for several reasons. Doc. 12 at 23. First, Debtors did not waive their opposition to the Second Claim by failing to address it at the October 23, 2019 hearing because Pierre filed the Second Claim on the claims register only five days before the hearing. *See* Doc. 12-21. As the Bankruptcy Court explained at the hearing on the Second Claim, under Fed. R. Bankr. P. 3007(a)(1), an objection to the allowance of a claim has to be filed and served at least 30 days before any scheduled hearing on the objection. Tr. of 09/03/20 Hr'g at 8:9–14, Doc. 12-17. Nor does the doctrine of judicial estoppel apply, because Debtors'

12

position has never changed. As the Debtors state, they have consistently opposed Pierre's claims as time barred. Doc. 12 at 25.

Because the Bankruptcy Court did not in fact deny the Second Claim as late filed by operation of the bar date, the Court need not consider Debtors' arguments that doing so would have been an appropriate exercise of the Bankruptcy Court's discretion.

### B. Due Process Rights

Pierre asserts that the Bankruptcy Court violated his procedural due process rights by not giving him an adequate opportunity to be heard on the Second Claim during the hearing on the First Claim, held on October 23, 2019. Doc. 11 at 24. Pierre relies on *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007), for the proposition that, under the Fifth Amendment's Due Process Clause, "no person may be deprived of life, liberty, or property without reasonable notice and an opportunity to be heard." However, the Bankruptcy Court in fact afforded Pierre two opportunities to be heard. *See* Tr. of 10/23/19 Hr'g, Doc. 12-8; Tr. of 09/03/20 Hr'g, Doc. 12-17. A hearing on the First Claim took place on October 23, 2019. At the second hearing, held on September 3, 2020, the Bankruptcy Court explained to Pierre that, although the Second Claim was disallowable and expungeable on the same basis as the First Claim, it was allowing Pierre a full hearing on the Second Claim in order to afford him his due process rights. Tr. of 09/03/20 Hr'g at 8:20–9:1, 13:3–8, Doc. 12-17. Pierre's due process argument therefore fails.

### C. Pierre's Administrative Procedure Act Claim Against OCC

Finally, the instant appeal purports to raise for the first time a claim under the Administrative Procedure Act ("APA") against the OCC.

As the Bankruptcy Court explained at the first hearing, the Bankruptcy Court did not have jurisdiction to review determinations made by OCC or the CFPB. Tr. of 10/23/19 Hr'g at 14:4–10, Doc. 12-8 ("I understand that you were unhappy with the . . .

300-dollar payment that you received after the review was conducted by the CFPB. That's not something I have anything to say about in this court. [ . . .] I have jurisdiction over this Aurora case, and I am unable to give you any relief or grant you any review with respect to the payment you received.") Moreover, although Pierre asserted that the compensation he received from OCC was too low, he never raised an APA claim before the Bankruptcy Court at the September 3, 2020 hearing on his Second Claim. Pierre has therefore waived the issue. *See, e.g.*, *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005); *Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994).

Furthermore, even if Pierre had not waived the issue, the OCC letter is not reviewable by this Court. "Under the APA, a court may review federal agency action only if there is a statute permitting such review or if the challenged decision is the 'final agency action for which there is no other adequate remedy in a court.'" *Altowaiti v. Wolf*, No. 18 CIV. 508 (ER), 2021 WL 2941753, at *3 (S.D.N.Y. July 12, 2021) (quoting *6801 Realty Co., LLC v. U.S. Citizenship & Immigr. Servs.*, 719 F. App'x 58, 60 (2d Cir. 2018) (summary order) (internal citations and quotations omitted); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83–84 (2d Cir. 2008). "The APA makes a '*final* agency action for which there is no other adequate remedy in a court ... subject to judicial review.'" *Salazar v. King*, 822 F.3d 61, 82 (2d Cir. 2016) (quoting 5 U.S.C. § 704). In order to constitute a final agency action, such action must meet two conditions: "First, the action must mark the consummation of the agency's decision making process"—that is, "it must not be of a merely tentative or interlocutory nature." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett*, 520 U.S. at 178).

The April 2013 notice and the $300.00 payment were not final agency action for purposes of the APA. As the notice made clear on its face, the payment was the result of a consent agreement between federal regulators and Aurora. Doc. 12-13 at 52.

Moreover, neither the notice nor Pierre's receipt of the payment determined any rights or obligations, nor did they result in any legal consequences.  In fact, the notice stated "[b]y cashing or depositing the check, you do not waive any legal claims against your servicer and you may [illegible] additional actions related to your foreclosure." *Id.* at 53.  Furthermore, under the APA, a plaintiff is only entitled to redress for wrongs because of agency action when there is "some statute or regulation that would limit the [agency]'s discretion." *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003).  "[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004).  As the OCC wrote to Pierre in April 2016, there is no appeal of the payment amount and no individual private right of action to enforce OCC consent order agreements.  Doc. 12-13 at 62.  Pierre has failed to allege any colorable claim under the APA, and his arguments under the APA are therefore dismissed.

### IV.  CONCLUSION

For the reasons set forth above, the September 14, 2020 order of the Bankruptcy Court is AFFIRMED.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  The Clerk of Court is respectfully directed to docket this decision and to close this case, 20 Civ. 8282 (ER).  The Clerk of Court is further respectfully directed to mail a copy of this opinion to the *pro se* appellant.

It is SO ORDERED.

Dated:   August 13, 2021
         New York, New York

_____
Edgardo Ramos, U.S.D.J.